UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

ALAN QUINONES,

                    Defendant.

00 Cr. 761-1 (JSR)


**THE GOVERNMENT'S MEMORANDUM OF LAW
IN OPPOSITION TO THE DEFENDANT'S MOTION FOR
<u>COMPASSIONATE RELEASE UNDER 18 U.S.C. § 3582(c)(1)(A)(i)</u>**


AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York
One Saint Andrew's Plaza
New York, New York 10007


Jonathan L. Bodansky
Assistant United States Attorney
          *Of Counsel*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

RELEVANT BACKGROUND ........................................................................................... 1

    A.    Offense Conduct and Procedural History ............................................... 1

    B.    Rodriguez's Motion ................................................................................. 3

    C.    The Defendant's Motion .......................................................................... 4

APPLICABLE LAW .......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.    The Defendant Has Failed to Establish an Extraordinary and Compelling
    Reason for a Reduction in Sentence ................................................................... 7

II.    A Reduction in Sentence is Not Appropriate Based on the 3553(a) Factors .................... 10

CONCLUSION .................................................................................................................. 12

# TABLE OF AUTHORITIES

*Page*

## Cases

*Quinones v. United States*, 555 U.S. 910 (2008) ............................................................ 2

*Rodriguez v. United States*, No. 00 Cr. 761 (JSR), 2012 WL 1059355
    (S.D.N.Y. Mar. 29, 2012) .................................................................... 2

*United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) ................................................. 5

*United States v. Butler*, 970 F.2d 1017 (2d Cir. 1992) ................................................. 6

*United States v. Ebbers*, 432 F. Supp. 3d 421 (S.D.N.Y. 2020) .................................... 6

*United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL 4699042
    (S.D.N.Y. Aug. 13, 2020) ................................................................... 6

*United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327 (S.D.N.Y. 2020)....................... 10

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007).................................... 1, 2, 10

## Statutes

18 U.S.C. § 3553.................................................................................................... *passim*

18 U.S.C. § 3582 ............................................................................................... 1, 5, 6, 7

28 U.S.C. § 2255 ...................................................................................................... 2

U.S.S.G. § 1B1.13 .................................................................................................... 5

## Other Authorities

Centers for Disease Control and Prevention, *COVID-19: People at
    Increased Risk – People with Certain Medical Conditions*,
    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
    precautions/people-with-medical-conditions.html......................................... 7, 8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in opposition to defendant Alan Quinones's (the "defendant" or "Quinones") *pro se* motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) (ECF No. 382), as supplemented by counsel on December 11, 16, and 21, 2020 (ECF Nos. 388-92) (the "Motion").  As set forth below, the Court should deny the Motion because the defendant has failed to establish an extraordinary and compelling reason for a reduction in sentence, and because a reduction in sentence is not appropriate based on the Section 3553(a) factors.

## RELEVANT BACKGROUND

### A.    Offense Conduct and Procedural History[1]

In the 1990s, the defendant led a racketeering enterprise focused on the distribution of cocaine and heroin in the Bronx and elsewhere.  (ECF No. 380 at 2.)  Following the defendant's March 1999 arrest for selling heroin to an undercover police officer, the defendant and others, including Quinones's co-defendant Diego Rodriguez ("Rodriguez"), retaliated against Eddie Santiago ("Santiago") – a confidential informant of the New York City Police Department whom the defendant blamed for his arrest – by murdering him and burning his body.  (*Id.*); *United States v. Quinones*, 511 F.3d 289, 292 (2d Cir. 2007).  The murder was at the defendant's orders and preceded by "brutal torture."  (ECF No. 380 at 2.)  Following his murder, Santiago's charred body was found in a vacant lot in the Bronx, hogtied, with his nose and mouth covered in duct tape.

---

[1] As the Court is already familiar with the general background to this case (*see, e.g.*, ECF No. 380 at 2), the Government provides here only a brief overview of the defendant's offense conduct and the relevant procedural history.

*Quinones*, 511 F.3d at 294; PSR ¶ 40.[2]  As this Court has previously observed, the underlying offenses here – which included "an act of torture and violence designed to send a dangerous message that cooperation with law enforcement would be brutally punished – were truly "horrific." (ECF No. 380 at 1, 20.)

The defendant and Rodriguez were convicted in 2004, following a seven-week trial, on substantive and conspiratorial counts of racketeering, substantive and conspiratorial counts of drug trafficking, and the murder of the confidential informant in connection with the drug trafficking.  (*Id.* at 2-3.)  The murder of Santiago exposed the defendants to the death penalty, but during the penalty phase, the jury voted to impose a sentence of life imprisonment.  (*Id.* at 3.)  This Court accordingly sentenced the defendants to life imprisonment, on three separate counts, on September 27, 2004.  *Quinones*, 511 F.3d at 294-95.

The defendant and Rodriguez appealed to the Second Circuit, which affirmed the convictions in 2007.  *Quinones*, 511 F.3d at 291.  The defendants then applied for a rehearing *en banc*, which was denied in 2008, *see Rodriguez v. United States*, No. 00 Cr. 761 (JSR), 2012 WL 1059355, at *3 (S.D.N.Y. Mar. 29, 2012), and the Supreme Court denied a petition for a writ of *certiorari* later that year, *Quinones v. United States*, 555 U.S. 910 (2008).  Since then, the defendant has also filed a motion pursuant to 28 U.S.C. § 2255, which was denied, and he has sought, and been denied, a certificate of appealability from the Second Circuit.  (ECF Nos. 321, 326.)

---

[2] "PSR" refers to the Presentence Investigation Report prepared by the United States Probation Office in connection with the defendant's sentencing in 2004.

**B.      Rodriguez's Motion**

On June 17, 2020, Rodriguez filed with this Court a *pro se* motion for compassionate release (ECF No. 369), which was then supplemented by counsel on July 31, 2020 (ECF Nos. 371-72).  The Government opposed the motion (ECF No. 373), but on September 30, 2020, the Court granted Rodriguez's motion in part, reducing his life sentence to a term of 30 years' imprisonment followed by a lifetime of supervised release (ECF No. 380).

The Court held that Rodriguez had established extraordinary and compelling reasons for a reduction in sentence based on three factors: (1) Rodriguez's underlying health conditions, which included Type 2 diabetes mellitus and obesity, put him at a high risk of severe illness from COVID-19; (2) the pandemic has made Rodriguez's incarceration harsher and more punitive than it would otherwise have been; and (3) there was, in the Court's words, "overwhelming evidence of Rodriguez's total rehabilitation" that was "nothing short of remarkable."  (*Id.* at 5-14.)  The Court further found that although Rodriguez's immediate release would not reflect the seriousness of, or provide just punishment for, his crimes, a reduction in sentence to 30 years' imprisonment, followed by a lifetime of supervised release, was appropriate based on the Section 3553(a) factors. (*Id.* at 14-21.)[3]

---

[3] The Court also "circle[d] back to confirm that such a reduction [wa]s warranted by, and would be reasonably responsive to, the above-described extraordinary and compelling reasons."  (*Id.* at 15-16.)  The Court found that it was, because although the first of the aforementioned extraordinary and compelling reasons for release might diminish in importance once the pandemic ends, the second and third reasons would be "just as relevant at the time of Rodriguez's release as they are now."  (*Id.* at 21-23.)

### C.      The Defendant's Motion

In his present motion, the defendant, now 53 years old, asserts many of the same arguments raised by Rodriguez and asks this Court for a reduction in sentence "to the lowest sentence this Court can in good conscience impose."  (ECF No. 388 at 1.)

In his initial filing, the defendant argues that extraordinary and compelling reasons for a reduction of sentence are present in light of: (1) the ongoing COVID-19 pandemic; (2) his medical conditions, including high blood pressure, asthma, prediabetes, and hypertension, which, he argues, puts him at increased risk of death or severe illness if exposed to COVID-19; and (3) the presence of, and risks of contracting, COVID-19 at FCI Cumberland, where he is incarcerated. (*See* ECF No. 382 at 1, 3-7.)  The defendant further argues that a reduction in sentence is appropriate under the Section 3553(a) factors, given his "extraordinary transformation of character" – as demonstrated by his completion of numerous rehabilitation programs while incarcerated, his strong work record while incarcerated, his favorable institutional record, and the strong family ties he has maintained.  (*Id.* at 4-5, 8-9.)  The defendant also asserts that he has a "verifiable release plan," in that if he is released, he has been invited to live with, and be employed by, his nephew.  (*Id.* at 5, 9.)

In supplemental filings, defense counsel reiterates many of the points made by the defendant.  He further argues, however, that the defendant's purported obesity also places him at heightened risk of COVID-19 (ECF No. 388 at 7); that the pandemic has made the defendant's incarceration harsher and more punitive than it would otherwise have been (*id.* at 8-9); and that the defendant's risk of recidivism is low (*id.* at 11).  Counsel also highlights the defendant's troubled upbringing (*id.* at 9-10) – citing to, among other things, a psychological evaluation submitted in connection with the defendant's original sentencing, in which a clinical psychologist noted the defendant's traumatic background and found that the defendant had a capacity for

empathy, remorse, and personal change through rehabilitation and treatment – and he submits six letters of support from friends, fellow inmates (past and present), Rodriguez, and one Federal Bureau of Prisons ("BOP") official (ECF Nos. 388-1, 388-2).

## APPLICABLE LAW

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act, the Court "may not modify a term of imprisonment once it has been imposed," except that:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

*Id.* The Sentencing Commission, prior to the First Step Act's amendment of Section 3582, had promulgated a policy statement on compassionate release, U.S.S.G. § 1B1.13. The Second Circuit, however, has construed this policy statement as applicable only to compassionate release motions brought by the BOP, not those brought by defendants. *See United States v. Brooker*, 976 F.3d 228, 234-36 (2d Cir. 2020).

Thus, in instances such as this, involving a motion brought by the defendant and not the BOP, there are three prerequisites for granting a compassionate release motion. First, the defendant must have exhausted his administrative rights. *See* 18 U.S.C. § 3582(c)(1)(A). Second, the court must find that "extraordinary and compelling reasons warrant" a reduction of sentence. 18 U.S.C. § 3582(c)(1)(A)(i). And third, the court must consider the sentencing factors set forth

in 18 U.S.C. § 3553(a).  18 U.S.C. § 3582(c)(1)(A).  As the proponent of the motion, the defendant

bears the burden of proving each of these prerequisites.  *See United States v. Butler*, 970 F.2d

1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on

a given issue normally has the burden of proof as to that issue."); *United States v. Ebbers*, 432

F. Supp. 3d 421, 426 (S.D.N.Y. 2020) ("The defendant has the burden to show he is entitled to a

sentence reduction."  (citing *Butler*)); *United States v. Givens*, No. 14 Cr. 546-09 (CM), 2020 WL

4699042, at *2 (S.D.N.Y. Aug. 13, 2020) (similar).

## ARGUMENT

The Government recognizes that this Court recently granted a reduction in sentence to

Quinones' co-defendant, Rodriguez.  The Government respectfully submits, however, that similar

relief is not warranted or appropriate here; this is simply not the same case, and the two defendants

are not similarly situated.  As set forth further below, not only was this defendant more culpable

in the underlying offense conduct, but he also lacks risk factors for COVID-19 and has failed to

put forward comparable evidence of rehabilitation.  As such, the defendant has failed to establish

an extraordinary and compelling reason for a sentence reduction, and the relevant factors under

Section 3553(a) weigh against a reduction in his sentence in any event.[4]

---

[4] The defendant filed a compassionate release / reduction in sentence request with the warden on
September 11, 2020, which was denied on September 29, 2020.  The defendant represents in his
papers that he renewed his request on October 1, 2020 and received another denial on October 20,
2020, but he acknowledges that he has not pursued any administrative appeal of that decision.
(ECF No. 388 at 2.)  Thus, the defendant has failed to exhaust his administrative remedies.
Nevertheless, more than 30 days have passed since the defendant filed his request with the warden,
and, therefore, the defendant is permitted to file the present motion in federal court.

I. **The Defendant Has Failed to Establish an Extraordinary and Compelling Reason for a Reduction in Sentence**

The defendant argues that he suffers from several health issues, including high blood pressure, asthma, prediabetes, and hypertension, which "create a high risk of illness and even death from COVID-19" and "extraordinary and compelling reasons to have his sentence modified." (ECF No. 382 at 1.)  While it is true that the presence of underlying health conditions that increase the risks associated with COVID-19 can constitute extraordinary and compelling reasons for a reduction in sentence under Section 3582 (*see, e.g.*, ECF No. 380 at 7), the defendant has failed to establish that he in fact suffers from any such conditions.

As an initial matter, neither the defendant nor defense counsel have put forward any documentary evidence of the defendant's asserted health conditions.[5]  But, in any event, even if adequately established by evidence, the defendant's asserted health issues have not been identified by the Centers for Disease Control and Prevention (the "CDC") as conditions that put the defendant at a heightened risk for severe illness from COVID-19.  *See* Centers for Disease Control and Prevention, *COVID-19: People at Increased Risk – People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited December 30, 2020).  The most recent guidance from the CDC makes clear that unlike individuals with certain underlying medical conditions, such as Type 2 diabetes mellitus, who "*are at increased risk* of severe illness from the virus that causes COVID-19,"

---

[5] A review of the defendant's BOP medical records, excerpts of which are attached hereto as Exhibit 1, reflect that the defendant has been diagnosed with "Hypertension, Benign Essential" since 2009, and prediabetes since 2018.  Ex. 1 at 27-28.  The records further reflect that the defendant's "Asthma, unspecified" has been in "[r]emission" since 2008.  *Id.* at 28.  Because the attached medical records include the defendant's personal medical information, the Government is submitting them under seal, with the Court's permission.

individuals with conditions including high blood pressure, asthma, and hypertension merely "*might be*" at an increased risk. *See id.*[6] The defendant's conditions of high blood pressure, asthma, prediabetes, and hypertension thus do not constitute an extraordinary and compelling reason for a reduction in sentence.

Defense counsel, in his supplemental submission, further identifies the defendant's purported obesity as a risk factor for COVID-19 that warrants compassionate release. (*See* ECF No. 388 at 7.) Again, it is true that the CDC has identified severe obesity, defined as a body mass index ("BMI") of greater than or equal to 40 kg/m$^2$, and obesity, defined as a BMI of greater than or equal to 30 kg/m$^2$, as risk factors for COVID-19. The defense, however, has not established that the defendant meets either threshold. In his supplemental papers, defense counsel cites to paragraph 80 of the PSR for the proposition that the defendant's height of 5'9" and weight of 210 pounds results in a BMI of 31.0, placing him "squarely" in the COVID-19 high-risk category. (ECF No. 388 at 7.) Paragraph 80 of the PSR, however, addresses the defendant's criminal history, not his physical condition. Moreover, paragraph 89 of the PSR, which does address the defendant's physical condition, reveals that at the time of sentencing, the defendant's height was instead 5'10" and his weight was instead 200 pounds, resulting in a BMI of 28.7 – squarely *outside* the range identified by the CDC as high risk.[7]

---

[6] Prediabetes is not mentioned in the CDC guidance in any capacity. *See id.*

[7] The defendant's medical records reveal that he maintained the same weight of 200 pounds – and, thus, the same BMI of 28.7 – as recently as December 10, 2019. *See* Ex. 1 at 75. Since then, his weight, and BMI, appear to have fluctuated slightly above, and – more recently – slightly below, the 30.0 threshold. *See* Ex. 1 at 10-11 (listing a weight on July 7, 2020 of 211 pounds, which equates to a BMI of 30.3; note that the records from that date, apparently mistakenly, list a BMI of 31.2); *id.* at 2 (listing a weight on November 24, 2020 of 208.4 pounds, which equates to a BMI of 29.9). The Government respectfully submits that these borderline BMI figures, without more, do not constitute an extraordinary and compelling reason for a reduction in sentence.

Thus, the defendant has not presented evidence that he suffers from any underlying health condition that constitutes an extraordinary and compelling reason for a sentence reduction.

The defendant also cites to his purported rehabilitation as a reason for a reduction in his sentence.  The Court found this factor to weigh strongly in favor of a finding of extraordinary and compelling reasons for a sentence reduction in the case of Rodriguez, but the Government respectfully submits that Rodriguez's case was materially different from the one now before this Court.

The Government does not dispute that the defendant has put forward some evidence of rehabilitation, and the Government commends the defendant for his efforts and for his apparently successful prison record.  That said, the evidence of rehabilitation put forward by the defendant is simply not comparable to that provided by Rodriguez.  In the case of Rodriguez, the Court found that there was "overwhelming evidence" of "total rehabilitation," taking particular note of an "extraordinary collection of letters" from, among others, 27 members of the prison staff.  (ECF No. 380 at 9-11.)  The Court referred to this evidence as "nothing short of remarkable," going so far as to say that it had in fact "never before received on behalf of an incarcerated defendant such glowing letters written by prison staff."  (*Id.* at 10.)  Here, by contrast, the defendant submitted only one such letter – which is meaningful, but not extraordinary.  Indeed, during oral argument on Rodriguez's motion, the Court specifically noted that defendants will occasionally "get one or two" such letters from prison staff, but it stated that 27 was "quite extraordinary."  (ECF No. 377 at 5.)

Having failed to establish known risk factors for COVID-19 or truly extraordinary rehabilitation, the defendant is left with no option but to argue that the pandemic, and the concomitant lockdowns and restrictions, have made his period of incarceration harsher and more

punitive than it otherwise would have been.  But, while this argument may have some merit, the Court has expressly stated that this factor is insufficient, on its own, to establish an extraordinary and compelling reason for compassionate release.  (*See* ECF No 380 at 9 (citing *United States v. Pinto-Thomaz*, 454 F. Supp. 3d 327 (S.D.N.Y. 2020)).)

*                    *                    *

For the foregoing reasons, the defendant has failed to establish an extraordinary and compelling reason for a reduction in sentence, and revisiting the defendant's duly imposed life sentence for, among other offenses, the brutal torture and murder of a government informant, is not warranted.

## II.    <u>A Reduction in Sentence is Not Appropriate Based on the 3553(a) Factors</u>

Even if the defendant had established an extraordinary and compelling reason for a reduction in sentence, a reduced sentence is available only for defendants who meet that preliminary threshold *and* for whom a reduction is appropriate based on the factors set forth in Section 3553(a).  Here, a reduction in sentence would not be appropriate.

The Court, of course, recently reduced the sentence of Rodriguez to a term of 30 years' imprisonment, followed by a lifetime of supervised release, over the Government's objection.  But, even if such a sentence is appropriate for Rodriguez, the same is not true for this defendant.  First, Quinones was unquestionably more culpable in the original offense conduct than Rodriguez; Quinones was the leader of the drug trafficking enterprise, while Rodriguez was merely his chief lieutenant, and Santiago's murder was carried out at the defendant's behest.  *See Quinones*, 511 F.3d at 292-94; ECF No. 377 at 5 (the Court stating that "Mr. Quinones was clearly the number one culprit"); Sentencing Tr. at 7, 20, Sept. 27, 2004 (the Court stating that "it was established beyond a reasonable doubt and, indeed, beyond all possible doubt that Mr. Quinones had a leadership role," while assigning a lower-level role to Rodriguez).  Furthermore, on the other side

10

of the ledger, and as explained above, although the Government acknowledges that the defendant has put forward evidence of meaningful rehabilitation, such evidence falls far short of that provided by Rodriguez.

More fundamentally, it is difficult to overstate the seriousness of the defendant's underlying offense conduct here.  The defendant was not only the leader of a large-scale drug trafficking enterprise, but he also tortured and murdered a government informant.  Indeed, this Court has referred to the offense conduct here as "horrific" (ECF No. 380 at 1) and "heinous" (*id.* at 19), and it has acknowledged that "this was an egregious murder not only because of the way it was conducted but also because it was designed to retaliate against those who at great risk had chosen to cooperate" (ECF No. 377 at 9).  (*See also* ECF No. 380 at 20 (the Court stating that this was "an act of torture and violence designed to send a dangerous message that cooperation with law enforcement would be brutally punished," and agreeing with the Government that the offense was "squarely at odds with any modicum of respect for the law and human life").)

At the time of sentencing, the Court determined that a life sentence was sufficient, but not greater than necessary, to comply with the factors set forth in Section 3553(a).[8]  Neither the present pandemic nor the steps the defendant has taken toward rehabilitation materially alters the calculus such that a modification of that sentence would now be warranted or appropriate.  The Section 3553(a) factors, including the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence to criminal conduct, demand that the severity of the defendant's conduct be met with a

---

[8] As the Court has explained previously, it found at the time that a life sentence was appropriate separate and apart from any Sentencing Guidelines mandate.  (*See* ECF No. 380 at 19.)

substantial sentence that is carried to completion.  Reducing the defendant's sentence now would

not be in the interest of justice, nor would it reflect the gravity of his crimes.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that the defendant's

motion should be denied.


Dated: New York, New York
       December 30, 2020

                                        Respectfully submitted,

                                        AUDREY STRAUSS
                                        Acting United States Attorney for
                                        the Southern District of New York


                        By:     _____
                                        Jonathan L. Bodansky
                                        Assistant United States Attorney
                                        (646) 957-1800


CC:    Patrick Brackley, Esq. (via email and ECF)