UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
UNITED STATES OF AMERICA,            :
                                     :
                                     :     00 Cr. 761-1 (JSR)
          -v-                        :
                                     :     MEMORANDUM ORDER
                                     :
ALAN QUINONES,                       :
                                     :
                                     :
          Defendant.                 :
------------------------------------x

JED S. RAKOFF, U.S.D.J.

        Before the Court is the motion of defendant Alan Quinones for

a sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). For

the reasons set forth below, the motion is granted and Quinones'

sentence will be reduced to a term of 35 years' imprisonment, to

be followed by lifetime supervised release.

**Background**

        Familiarity with the general background to this case is here

assumed. See United States v. Quinones, 511 F.3d 289, 292-96 (2d

Cir. 2007). As relevant here, in the 1990s, Quinones, along with

his co-defendant at trial, Diego Rodriguez, ran a racketeering

enterprise focused on the distribution of cocaine and heroin in

the Bronx and elsewhere. Id. at 292. Quinones was the head of the

enterprise; Rodriguez served as his chief lieutenant. Id.

Following Quinones's March 1999 arrest for selling heroin to an

undercover police officer, Quinones and Rodriguez retaliated

1

against Eddie Santiago, a confidential informant whom they blamed
for Quinones' arrest, by murdering him. Id. The murder, at
Quinones' orders, was preceded by brutal torture. Id.

On July 27, 2004, Quinones and Rodriguez were convicted,
following a seven-week jury trial, on substantive and
conspiratorial counts of racketeering (18 U.S.C. § 1862(c), (d)),
substantive and conspiratorial counts of drug trafficking (21
U.S.C. §§ 841(a)(1), (b)(1)(A), 846), and the murder of the
confidential informant in connection with the drug trafficking (21
U.S.C. § 848(e)(1)(A)). Id. at 291. Because the guilty verdict
relating to Santiago's murder exposed Quinones and Rodriguez to
the death penalty, the trial included a penalty phase, during which
Quinones, in accordance with the then-mandatory Sentencing
Guidelines, expressly requested that the Court instruct the jury
that the only two possible punishments for his crime were the death
penalty or life imprisonment without the possibility of parole.
Id. at 319. The jury unanimously voted to impose a sentence of
life imprisonment, rather than the death penalty. Id. at 291. That
sentence was upheld on appeal. Id. at 324.

On September 30, 2020, the Court, finding that Rodriguez had
been a model prisoner, granted a sentence reduction to Rodriguez,
reducing his life sentence to a term of 30 years' imprisonment to
be followed by a lifetime of supervised release. See United States
v. Rodriguez, --- F. Supp. 3d ---, 2020 WL 5810161 (S.D.N.Y. 2020).

On November 4, 2020, Quinones, now 53 years old, moved pro se for a sentence reduction. Dkt. No. 382. The Court initially appointed counsel under the Criminal Justice Act, see Dkt. Nos. 381 & 385, following which Quinones retained his own counsel, see Dkt. Nos. 386 & 387. The motion has now been fully briefed and argued.

**Discussion**

Like Rodriguez, Quinones seeks a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)(i). Under that statute, a district court must make four determinations before granting a sentence reduction: (1) that the defendant complied with the administrative exhaustion requirement, (2) that the defendant has shown extraordinary and compelling reasons warranting a sentence reduction, (3) that the 18 U.S.C. § 3553(a) sentencing factors are consistent with a sentence than is less than that previously imposed, and (4) that that sentence reduction is warranted by the extraordinary and compelling reasons. See United States v. Garcia, --- F. Supp. 3d ---, 2020 WL 7212962, at *2 (S.D.N.Y. Dec. 8, 2020).

I.   Administrative Exhaustion

Ordinarily, a defendant must first satisfy an administrative exhaustion requirement by seeking compassionate release through the Bureau of Prisons, which has thirty days to respond before any motion can be made to the district court. While the administrative exhaustion requirement is waivable in certain circumstances, see

United States v. Haney, 454 F. Supp. 3d 316 (S.D.N.Y. 2020), that point is irrelevant here since, as the Government concedes, Quinones exhausted his administrative remedies. Specifically, more than thirty days have passed since Quinones first sought compassionate release from the Warden of FCI Cumberland, where he is incarcerated. The Government's Memorandum of Law in Opposition to the Defendant's Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i) ("Gov. Mem."), Dkt. No. 393, at 6 n.4.

II.  Extraordinary and Compelling Reasons

Second, Quinones must demonstrate "extraordinary and compelling reasons" supporting a sentence reduction. In the case of Rodriguez, the Court found extraordinary and compelling reasons based on three factors: (1) Rodriguez's underlying health conditions, which included Type 2 diabetes mellitus and obesity, put him at a high risk of severe illness from COVID-19; (2) the pandemic had made Rodriguez's incarceration harsher and more punitive than was foreseeable at the time of sentencing; and (3) there was "overwhelming evidence of Rodriguez's total rehabilitation." Id. at *2.[1]

The same three considerations lead the Court to conclude that extraordinary and compelling reasons support a sentence reduction

---

[1]    Unless otherwise indicated, in quoting cases all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

for Quinones. First, Quinones's underlying health conditions put him at a high risk of severe illness from COVID-19. Like Rodriguez, Quinones has struggled with obesity, as his body-mass index has, over the past few years, fluctuated around the obesity threshold of 30, reaching as high as 30.3 in July 2020 before more recently dropping down to 29.9. See Gov. Mem. at 8 n.7. In addition, Quinones has a history of a high blood pressure, asthma, and hypertension, all diseases identified by the CDC as potentially subjecting people to an increased risk from COVID-19. See Centers for Disease Control and Prevention, COVID-19: People at Increased Risk – People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. While Quinones might have less severe comorbidities than did Rodriguez, the Court concludes that Quinones' borderline obesity, together with his other documented health conditions, tip in favor of a finding of extraordinary and compelling reasons.

Second, the Court finds, as it did with Rodriguez, that the pandemic, because of the concomitant lockdowns and restrictions that are necessary to ensure inmate safety, has rendered Quinones's incarceration "far harsher and more punitive than the Court had anticipated at sentencing." Rodriguez, 2020 WL 5810161, at *8. This, too, is relevant to the Court's finding of extraordinary and compelling reasons.

Finally, and here most relevant, Quinones, like Rodriguez, has put forth "overwhelming evidence of . . . total rehabilitation." Id. at *4. As the Court previously observed, a defendant's rehabilitation, while insufficient in itself to warrant release or sentencing reduction, "can 'interact with the present coronavirus pandemic' to create an extraordinary and compelling reason for a sentence reduction." Id. (quoting United States v. Brooker, 976 F.3d 228, 238 (2d Cir. 2020)). Quinones supports his motion with substantial evidence of rehabilitation, including a successful prison record, exemplary work history, and countless programming certificates. See Dkt. Nos. 396 & 399. These all factor into the Court's finding of rehabilitation.

Also important are the tens of letters -- from Quinones' family, friends, and fellow inmates -- that speak to the remarkable transformation that Quinones has undergone during his more than two decades of incarceration. See Dkt. Nos. 388-1, 388-2, 397-1-6. These letters make clear that, notwithstanding two decades of incarceration and no prospect of release, Quinones has been a devoted father to his sons and a supportive member of his family. Indeed, defense counsel represents, and fellow inmates affirm, to the Court that over the past decade Quinones has sent many thousands of dollars to his family from his earnings in prison industry. These letters also demonstrate that Quinones has gained

the respect and admiration of many fellow inmates who look to him as a mentor.

Still further, Quinones, like Rodriguez, has submitted multiple letters from prison officials, some expressly advocating for his release. See Letter from Akili K. Ujima, Law Enforcement Officer and Special Learning Needs Coordinator, dated November 14, 2020, Dkt. No. 388-1 (attesting to the "transformation that Mr. Quinones has demonstrated over the years" and requesting "a fair and reduced sentence"); Letter from Jeff Pealer, Relief Foreman UNICOR, dated November 26, 2008, Dkt. No. 399 ("I feel inmate Quinones would be a positive influence in today's society and would be able to make it today on the street.").

The Government does not dispute that Quinones "has put forward some evidence of rehabilitation," but maintains that Quinones' record is "simply not comparable to that provided by Rodriguez." Gov. Mem. at 9. The Government largely focuses on the fact that, in support of Rodriguez's motion, the Court received 27 letters from members of the prison staff -- far more than what the Court has received in connection with Quinones' motion. Id.

But while it is true, that the many such letters submitted on Rodriguez's behalf weighed strongly in the Court's finding of extraordinary rehabilitation, a deluge of such letters is not a prerequisite to a finding of extraordinary rehabilitation. For one thing, Quinones' friends and family explain that Quinones is a

"quiet" and "humble" man who helps others without "seek[ing] recognition." See Letter from Luis Gonzalez to the Court dated January 14, 2021. It is no surprise, then, that Quinones has not sought out support letters as zealously as others might have. Moreover, following oral argument, the Court received a particularly powerful letter from Jesse R. Bell, the recently retired warden of FCI Cumberland, supporting a sentence reduction for Quinones. This was the first such letter that Mr. Bell has written in his "over 25 years of correctional experience gained at every security level within the BOP." Dkt. No. 396. He writes that Quinones is "an example of a truly rehabilitated individual," and that, if released, Quinones "will be a productive member of society and as always a true family man." Id. Mr. Bell's letter weighs heavily in the Court's finding that Quinones -- although perhaps quieter about his transformation than Rodriguez -- is no less transformed.

In sum, the Court finds that Quinones' underlying health conditions and the nature of incarceration during the coronavirus pandemic, taken together with the outstanding showing of rehabilitation, constitute an extraordinary and compelling reason for a sentence reduction.

III.  The Section 3553(a) Sentencing Factors

Next, the Court must reweigh the sentencing factors listed in Section 3553(a). At the time of sentencing, the Court determined

that a life sentence was sufficient, but not greater than necessary, to comply with those sentencing factors. Indeed, the Court found that a life sentence was appropriate separate and apart from the Sentencing Guidelines mandate. See Rodriguez, 2020 WL 5810161, at *7 n.10. Although the Court considers all of the Section 3553(a) sentencing factors, five groups of factors are especially relevant here.

First, on the one hand, Section 3553(a) requires that a sentence "reflect the seriousness of the offense," "promote respect for the law," and "provide just punishment for the offense." As the Court made clear with respect to Rodriguez's motion for a sentence reduction, "[t]hese factors counsel against a sentence reduction -- and effectively foreclose a reduction to time served." Id. at *7. Indeed, it is impossible to overstate the severity of Quinones' crime. Among the many submissions received in connection with this motion was a letter from Minerva Seda, the mother of the murder victim, registering her opposition to any sentence reduction. See Dkt. No. 398. The Court had expressly invited Ms. Seda to make known her views. Her letter makes especially salient the need for just punishment.

Second, and on the other hand, Section 3553(a) also requires the Court to account for the "history and characteristics" of Quinones. In this regard, "evidence of postsentencing rehabilitation may plainly be relevant." Pepper v. United States,

562 U.S. 476, 491 (2011). As detailed above, Quinones has undertaken extraordinary efforts at rehabilitation since his incarceration. His remarkable postsentencing record weighs strongly in favor of some sentence reduction.

Third, a sentence should "protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Quinones' rehabilitation is plainly relevant to this factor, too, and likewise militates in favor of a sentence reduction. Also relevant here is Quinones' age. At 53 years old, Quinones is unlikely to re-offend, especially considering that, if his sentence is reduced to 35 years, then, even with "good time" credit, he will be more than 65 years old upon his release, since he has only so far served about twenty years of his sentence.

Fourth, a sentence should "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." Id. § 3553(a)(2)(D). As discussed above, Quinones has taken advantage of the education and vocational training programs offered in prison and has earned a reputation as a reliable worker. See Letter from Floyd J. Dobson, Sheetmetal Foreman Unicor, Dkt. No. 399. Moreover, Quinones' nephew has represented that he would employ Quinones at his refrigeration company once Quinones is released. See Dkt. No. 397-5. Quinones' substantial experience in prison industry, along with this promising support network and reentry plan, suggest that

incarceration no longer serves to provide Quinones with needed educational and vocational training.

Finally, the Court must consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." As mentioned, the Court reduced Rodriguez's sentence 30 years' imprisonment, to be followed by a lifetime of supervised release. There is no denying, as the Government stresses, that Quinones was the more culpable of the two: Quinones was the leader of the drug trafficking enterprise, while Rodriguez was his chief lieutenant, and the murder of Santiago was carried out at Quinones' direction. Gov. Mem. at 10. However, while Quinones' increased culpability justifies a meaningfully higher sentence, it does not, in the Court's view, justify too great a disparity between the life imprisonment Quinines is now serving and the term of 30 years' imprisonment that Rodriguez has now received -- especially considering, for all the reasons laid out above, Quinones shares Rodriguez's record of life-altering rehabilitation.

After careful consideration, the Court concludes that a sentence of 35 years' imprisonment, to be followed by lifetime supervised release, is sufficient, but not greater than necessary, to comply with the purposes set forth in the Section 3553(a) sentencing factors. This sentence reflects the seriousness of the offense, promotes respect for the law, and provides just punishment

for the offense, while also accounting for Quinones'
postsentencing rehabilitation and avoiding an unjustifiable
sentencing disparity between Quinones and Rodriguez.

IV.  <u>The Nexus Requirement</u>

Finally, the Court must determine whether such a sentence is
warranted by the above-described extraordinary and compelling
reasons. That is because, as the Court has previously explained,
"[a] motion for sentence reduction can be granted only where there
is a nexus between the two: the Court may reduce a defendant's
sentence only if the 'extraordinary and compelling reasons warrant
such a reduction.'" <u>Garcia</u>, 2020 WL 7212962, at *4. For example,
where a motion for a sentence reduction based on a high risk of
death from COVID-19 results in the defendant's immediate release,
the nexus requirement is self-evidently satisfied. Things are a
bit more complicated where the sentence is reduced to a lesser
term of years, given that such a reduction does little to address
the immediate COVID-related risks. But where, as here, the
defendant's rehabilitation and the unforeseeably harsh nature of
his incarceration also factor into the mix of extraordinary and
compelling reasons, there is a sufficient nexus between those
reasons and the sentence reduction. Thus, the Court finds that the
above-described extraordinary and compelling reasons warrant a
reduction in Quinones' sentence from life imprisonment to a term

of 35 years' imprisonment to be followed by lifetime supervised release.

## Conclusion

For the foregoing reasons, Quinones' motion for a reduction in sentence is granted, and his life sentence is reduced to a term of 35 years' imprisonment, to be followed by lifetime supervised release on the terms and conditions previously specified. The Clerk of the Court is directed to close docket entries 388 and 389.

SO ORDERED.

Dated: New York, NY
      February 27, 2021

_____
JED S. RAKOFF, U.S.D.J.